Ronald THOMPSON, Plaintiff,

v.

AMOCO OIL COMPANY, Defendant.

No. 87–3283.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 7, 1989.

Fred B. Moore, Bloomington, Ill., Gary E. Persian, Minneapolis, Minn., for plaintiff.

Edward Huntley, Springfield, Ill., Gayle G. Stratmann, David M. Harris, St. Louis, Mo., for defendant.

## OPINION

RICHARD MILLS, District Judge:

This is an action under the Petroleum Marketing Practices Act (hereinafter PMPA), 15 U.S.C. § 2801 *et seq.*

Plaintiff seeks a judicial determination that the notice sent by Defendant advising Plaintiff that his Amoco oil dealer lease would be terminated and nonrenewed is ineffective for failing to comply with the PMPA. The cause is currently before the Court following a two-day bench trial, and submission of supplemental briefs by the parties.

The Court has previously ruled from the bench in favor of Plaintiff upon Defendant's affirmative defense under § 2802(b)(2)(A) of the PMPA; we now hold in favor of Plaintiff as well upon Defendant's affirmative defense under § 2802(b)(2)(C).

### Facts

Thompson entered into a franchise relationship with Amoco on November 1, 1984, with respect to Amoco Station Number 5279, at U.S. 51 and Raab Road, in Normal, Illinois. The franchise relationship was evidenced by a lease agreement and Thompson has managed the station ever since that time. Sometime after entering into the relationship, however, Thompson moved away from the Normal area and took up residence in Lake of the Ozarks, Missouri—some 300 miles from Normal.

Amoco officials learned of Thompson's move sometime before fall of 1986, and they were not pleased. Amoco has had a traditional policy of requiring franchisees to be physically present upon the franchised premises. In fact, Amoco attempted to memorialize this policy by including a clause in the lease contract requiring the franchisee "to devote his personal attention

upon the Premises to managing the business activities of the gasoline sales facility." Amoco officials met with Thompson to discuss this policy with him; Thompson, however, refused to acknowledge that Clause 15(f) required his physical presence at the station, nor did he recall ever having been told of the policy. Therefore, Thompson refused to return to the Normal area; instead, he stayed in Missouri, where he currently engages in substantial business activities.

Amoco officials remained unsatisfied, and so on June 3, 1987, they sent to Mr. Thompson a letter informing him that Amoco was terminating and nonrenewing the lease in question. The letter was sent to comply with the notice provisions of the PMPA, 15 U.S.C. § 2804. Amoco informed Thompson that it was terminating and nonrenewing the contract because Thompson "failed to devote [his] personal attention upon the premises to manage the business activities of the gasoline sales facility as required by [his] Dealer Lease with Amoco, in that [he has] permanently moved out of Illinois," thereby breaching Clause 15(f) of the contract; in addition, Amoco stated that "[a]n event has occurred which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable."

In response to the nonrenewal and termination letter, Plaintiff filed the instant complaint on July 22, 1987. The complaint seeks declaratory and injunctive relief, and in addition requests costs, fees, and exemplary damages for willful disregard of PMPA requirements. Plaintiff also sought a preliminary injunction; before a hearing could be held, however, the parties agreed to maintain the status quo pending final resolution of Plaintiff's cause of action. The present trial followed.

■ Under the PMPA, the franchisee (here, Thompson) may bring a civil action against the franchisor upon violation of the provisions of the PMPA. 15 U.S.C. § 2805(a). In such an action, the franchisee has the initial burden of proving that the franchise was terminated or nonrenewed. Thereupon the burden shifts to the franchisor to show that it has an affirmative defense that the termination was permitted under § 2802(b) or 2803 of the PMPA. 15 U.S.C. § 2805(c). Here, the parties have stipulated that Plaintiff has made out a *prima facie* case, and so the burden shifted to Amoco to prove that the letter terminating and nonrenewing the lease in question was permitted under the PMPA. The defenses identified by Amoco are those found in § 2802(b)(2)(A) and (C).

### The PMPA

■ The Petroleum Marketing Practices Act is remedial legislation intended "to strike a balance between the interests of the participants in a petroleum marketing franchise relationship." *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1220 (7th Cir.1982). The PMPA was intended to equalize the bargaining power between the franchisor and the franchisee in such relationships; previously, the franchisor, in a far superior bargaining position to that of the franchisee, was often able to win contractual concessions which at times bordered upon the unconscionable. Although PMPA has this as a general purpose, "the one thing the Act is clearly intended to prevent is the appropriation of hard-earned good will which occurs when a franchisor arbitrarily takes over a business that the franchisee has turned into a successful going concern." *Id.*

■ To accomplish these goals, the PMPA establishes as a general rule that termination or nonrenewal of a franchise or franchise relationship is prohibited. § 2802(a). In certain circumstances, however, the franchisor may escape this general prohibition and may terminate or nonrenew the relationship. *See generally* Annotation, *Termination or Nonrenewal of Franchise to Sell Motor Fuel in Commerce Under Petroleum Marketing Practices Act (15 USCS §§ 2801 et seq.)*, 53 A.L.R.Fed. 348 (1981). The grounds for termination or nonrenewal are set out in § 2802(b)(2), and in pertinent part include a failure of the franchisee to abide by reasonable and materially significant terms of the

franchise agreement, and "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable." § 2802(b)(2)(A) and (C). Furthermore, those events upon the occurrence of which termination or nonrenewal is permitted under § 2802(b)(2)(C) are defined in § 2802(c) by means of a nonexhaustive list. This list includes such franchisee actions as criminal misconduct, declaration of bankruptcy, or continuing severe physical or mental disability; also included are such unavoidable events occurring to the franchisor as loss of the right to grant use of trademarks, condemnation of the property in question, or loss of the franchisor's right to lease the property.

■ Finally, even if a permitted reason for nonrenewal or termination exists under § 2802(b)(2), the franchisor must still comply with the PMPA's notification requirements. Section 2804 of the act requires that notification be made by sending a certified letter to the franchisee informing him of the intent to terminate or not renew, the effective date of termination or nonrenewal, and the reasons for the decision to terminate or nonrenew. In addition, the affirmative defenses found in § 2802(b)(2) also contain their own notification requirements; for instance, the reasons for the termination or nonrenewal must have become known to the franchisor no more than 120 days before the franchisor notified the franchisee of the termination or nonrenewal.

■ The PMPA contains its own enforcement provisions, allowing wronged franchisees to bring civil actions against franchisors. 15 U.S.C. § 2805. Such civil actions may entitle the franchisee to recover actual damages, exemplary damages where appropriate, attorney and witness fees and any appropriate equitable relief including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief.

*Discussion*

■ As previously noted, Amoco has raised two affirmative defenses under the PMPA to this action—Amoco contends that Thompson violated a provision of the lease (§ 2802(b)(2)(A)) and claims that an "event" has occurred making termination or nonrenewal reasonable (§ 2802(b)(2)(C)). As previously noted, this Court has already ruled from the bench that the first of these defenses must be decided in Plaintiff's favor. The lease clause in question, 15(f), is undeniably ambiguous. It requires a franchisee "to devote his personal attention upon the Premises to managing the business activities of the gasoline sales facility." As we made clear in our previous ruling, "devote his personal attention upon the Premises" encompasses a large range of possible attention, anywhere from residence on the premises and full-time exclusive employment there, to situations such as the present. Amoco, despite its policy of "personal attention upon the Premises," does allow franchisees to manage more than one facility; in fact, Thompson is a multiple-location franchisee himself. It is thus obvious that "personal attention upon the Premises" does not require that a franchisee devote his exclusive attention to one franchise location. Hence, Clause 15(f) cannot be said to require actual physical presence upon the premises. In addition, the facts introduced at trial clearly indicated that Thompson was never apprised of Amoco's policy, and so had no reason to interpret Clause 15(f) to require his actual physical presence at the station. For these reasons, this Court found that Thompson did not fail "to comply with any provision of the franchise," § 2802(b)(2)(A), and so Amoco's affirmative defense on that ground has failed.

As this Court made clear from our ruling from the bench, Amoco's remaining affirmative defense raises a close call. Furthermore, the PMPA is a relatively arcane area of the law, with little precedent on this particular question. We therefore asked the parties to brief the question to some length, and we now turn our attention to that question.

To establish this affirmative defense, the Defendant must show, among other things, that an event occurred which was relevant to the franchise relationship, and as a result of which termination or nonrenewal was reasonable. Defendant must also show that it became aware of the event no more than 120 days before notifying the franchisee of the termination or nonrenewal. Defendant, of course, argues that each of these elements was met, and therefore that it was entitled to terminate and nonrenew this relationship.

■ The first issue to be addressed on this affirmative defense is the identity of the "event" alleged to have occurred. Plaintiff Thompson argues that scrutiny of the notification of termination or nonrenewal letter must lead to the conclusion that the "event" in question was Thompson's move out of Illinois into Missouri. Defendant, conversely, argues that the "event" was Thompson's lack of physical presence; Amoco argues that the move precipitated the "event" identified, but was not the "event" itself. Although Plaintiff's position has some appeal, the Court must side with Amoco on this question. Discreet "events" are not necessary under the PMPA; for instance, § 2802(c)(3) gives as an example of an "event" meeting the requirements of § 2802(b)(2)(C) "continuing severe physical or mental disability of the franchisee of at least 3 months duration." The "event" therefore does not need to be a single indivisible occurrence, but instead can be a continuing status. Here, Amoco has not alleged the breach of a policy against its franchisees moving; instead, it complains that its policy requiring franchisee presence at the station was disregarded by Thompson. Hence, the event in question is the failure of Mr. Thompson to be physically present at his station.

■ The next question raised is whether the notice given by Amoco of its decision to terminate or nonrenew the lease was sufficient under the PMPA. Thompson argues that the notice was untimely, and also that its contents failed to apprise him of the reasons for the nonrenewal or termination. Neither of these arguments persuade the Court, however. Because the event in question was the failure of Mr. Thompson to be physically present at his station, the event was ongoing and continuous; therefore Amoco had 120 days from each day of Thompson's failure to be physically present in which to notify him of its decision to nonrenew or terminate. *See Day Enterprises, Inc. v. Crown Central Petroleum*, 529 F.Supp. 1291, 1299 (D.Md. 1982); *Gruber v. Mobil Oil Corp.*, 570 F.Supp. 1088, 1092 (E.D.Mich.1983). Furthermore, the notice that was given adequately apprised Thompson of the reasons for termination or nonrenewal, and therefore complied with the PMPA. "The PMPA requires only that the franchisor articulate with sufficient particularity the basis for the decision not to renew so that the franchisee can determine his rights under the Act." *Brach, supra,* at 1226 (citation omitted). Here, the notice clearly informed Thompson that Amoco's ground for nonrenewal was that he was no longer physically present at the station. That certainly signaled Amoco's grounds for termination and nonrenewal, and therefore was fully adequate under the PMPA.

At last we reach the substance of the affirmative defense: Amoco argues that this case is similar to the situation envisioned by § 2802(c)(3), and that the nonrenewal or termination was thus *per se* reasonable; alternatively, Amoco argues that this Court should adopt wholesale the approach taken in *Brach, supra,* and find that the nonrenewal or termination was reasonable because Amoco's policy requiring actual dealer presence at the franchise facility is reasonable and a material aspect of the franchise relationship, and that Thompson's absence was within his reasonable control.

We will discuss these alternate positions in reverse order.

In *Brach v. Amoco Oil Co., supra,* the Seventh Circuit construed § 2802(b)(2)(C) in light of a nonrenewal notice precipitated by the failure of the franchisee to comply with the terms of a collateral contract. The franchisor had hoped to make the franchise more profitable by offering to sell the

premises to the franchisee; the franchisee, however, was unable to obtain financing, and this alleged breach of the contract to sell was the "event" identified by the franchisor which made nonrenewal reasonable pursuant to § 2802(b)(2)(C). In reversing the district court's finding that breach of the collateral contract did not constitute an "event" within the meaning of § 2802(b)(2)(C), the appellate court noted that the list of enumerated "events" found in § 2802(c) was nonexclusive, and was meant to guide the courts by indicating Congressional intent as to the section's meaning. 677 F.2d at 1219 (quoting S.Rep. No. 95–731, 95th Cong., 2d Sess. 15, 38, *reprinted in* [1978] U.S.Code Cong. & Ad. News 873, 896). In cases where nonenumerated events are raised as grounds for nonrenewal or termination, the courts are to provide careful scrutiny to assure that Congressional intent is fulfilled. *Id.* To make this determination, as with any other similar statutory interpretation, the nonenumerated event must be analyzed "in light of the list set forth in 2802(c), the other statutory provisions, and the underlying policies." *Id.*

In applying these considerations to the case before it, *Brach* reasoned that since breach of a collateral contract was not enumerated in the § 2802(c) list, the court should properly consider the PMPA treatment of similar situations. The court found that the most analogous situation was found in § 2802(b)(2)(A), which concerns franchisee breach of reasonable and materially significant franchise terms. In light of this, the Court borrowed the analytical approach to a § 2802(b)(2)(A) question to resolve the case before it, and found that "at a minimum [whether nonrenewal was reasonable] would seem to depend on 1) whether the real estate contract was material to the franchise relationship, 2) whether the relevant provisions of the real estate contract were reasonable, and 3) whether default was beyond the reasonable control of the franchisee." *Id.* at 1221–22.

■ This Court agrees with Amoco that the *Brach* approach must be followed, both because Seventh Circuit decisions guide

this Court and because *Brach* illustrates sound statutory interpretation. But that does not mean we should adopt the sum total of *Brach*, and in fact to do so here would actually work against the reasoning employed therein. The *Brach* decision teaches that in resolving a situation not included within the list of § 2802(c), the Court is to consider treatment of analogous situations elsewhere in the PMPA. The case at bar concerns an "event"—failure of Thompson to be physically present at the franchised premises—which violated longstanding Amoco policy. Amoco argues that violation of this policy is similar to violation of a contractual provision, and hence the *Brach* analysis should be employed here whole cloth. But to adopt this reasoning would totally undermine this Court's determination that Amoco has failed to establish that Thompson breached a contract term. Amoco is trying to accomplish indirectly what it failed to accomplish directly—Amoco is asking this Court to analyze this case under § 2802(b)(2)(A) even though we have already decided that nonrenewal or termination is not justified under that section. Furthermore, the case at bar is materially different from *Brach* in that the franchisee in *Brach* had expressly agreed to the terms of the collateral contract, whereas here the franchisee has never accepted Amoco's policy as a term of the contract between the parties. It would therefore clearly be error for this Court to borrow the analytical approach of § 2802(b)(2)(A) for use in resolving the present case.

■ Instead, this Court has heeded *Brach* and searched the PMPA for similar situations, and concludes that § 2802(c)(3) is most closely analogous to this case. This brings us to the other of Amoco's positions—that is, Amoco asks that this Court apply § 2802(c)(3), and find that nonrenewal or termination is *per se* reasonable here.

Section 2802(c)(3) provides that:
[a]s used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result of which termination of the fran-

chise or nonrenewal of the franchise relationship is reasonable" includes such events as— ... (3) continuing severe physical or mental disability of the franchisee of at least three months duration which renders the franchisee unable to provide for the continued proper operation of the marketing premises.

This is the only provision in the PMPA dealing with on-going failures by the franchisee to pay personal attention to the franchised premises, and it appears clearly analogous to Amoco's posited "event" here. Amoco asks the Court to take this analysis one step further, though, and to find that since this situation is similar to that in § 2802(c)(3), termination or nonrenewal is *per se* reasonable. With this contention the Court cannot agree, especially since by its own terms nonrenewal or termination under § 2802(c)(3) is not automatically reasonable, but only if the disability results in the franchisee being "unable to provide for the continued operation of the marketing premises."

The cases cited by Amoco in support of finding the termination here *per se* reasonable do not persuade. *Kostantas v. Exxon Company, USA,* 663 F.2d 605 (5th Cir. 1981), *cert. denied,* 456 U.S. 1009, 102 S.Ct. 2302, 73 L.Ed.2d 1305 (1982), concerned a contractual provision allowing termination upon the franchisee's death, and hence the analysis was under § 2802(b)(2)(A), not § 2802(b)(2)(C) or § 2802(c)(3) as here. In *Lanham v. Amoco Oil Co.,* 481 F.Supp. 405 (D.Md.1979), the court did analogize to § 2802(c)(3) in a case concerning termination upon the franchisee's death, but the court did not say that since death is similar to disability, termination was *per se* reasonable. Instead, that court expressly found "that the clear implication of § 2802(b)(2)(C), as defined in § 2802(c), is to allow termination of a franchise upon the death of the franchisee," *id.* at 407, and that "[i]t is merely logical to determine that death of the franchisee meets [the] standard" of § 2802(b)(2)(C). None of the other cases cited concern § 2802(c)(3), and so even if the courts did hold that events similar to those enumerated in the relevant § 2802(c) subsections rendered termination

or nonrenewal *per se* reasonable, they did not do so in light of subsection (c)(3)'s express limitation to circumstances of discontinued proper operation of the facilities.

In sum, this Court follows *Brach* and finds that § 2802(c)(3) is analogous to the case at bar, but declines to heed Amoco's suggestion that similarity results in *per se* reasonableness of termination or nonrenewal. Instead, we shall analyze the facts and circumstances of this case in light of the guidance provided by § 2802(c)(3).

Combining the elements of § 2802(b)(2)(C) and (c)(3), Amoco must establish the following to convince the Court that termination or nonrenewal is permitted under the PMPA here: (1) the event in question must be relevant to the franchise relationship, and (2) termination or nonrenewal based upon the event must be reasonable; this latter requires a showing that (a) Thompson has failed to be physically present at the premises, (b) he has failed to be physically present for at least three months, and (c) his failure to be physically present at the station has resulted in an inability "to provide for the continued proper operation of the premises."

▮▮▮ The Court finds that the event in question is relevant to the franchise relationship. Amoco has had a well-established national policy of actual franchisee presence for many years; Amoco attempted to memorialize this policy in its lease form, at Clause 15(f), but that clause failed to clearly articulate Amoco's intention, and instead merely suggests that franchisees are to devote personal attention to the franchised premises. At any rate, Thompson's failure to abide by Amoco's policy (the event in question) was relevant to the franchise relationship (and we so hold even though we also find that Thompson was never apprised unequivocally of the policy until after he had moved to Missouri). With respect to reasonableness of termination or nonrenewal based upon the event, we find that Thompson did fail to be present at the station for at least three months; however, we also find that, based upon the proofs introduced at trial, Amoco has not shown

that Thompson's absence resulted in his inability "to provide for the continued proper operation of the premises." Hence, we find that termination and nonrenewal was unreasonable based upon this event under § 2802(b)(2)(C).[1]

The standard to be applied is that the franchisee be unable to provide "proper operation" of the facility. The proofs at trial clearly showed that the station in question has always been properly operated. True, in certain years sales were down. But Amoco points to no other ill effects from Thompson's absence, and certainly did not show that the station is being improperly operated as a result of his absence. In fact, evidence presented showed that business has been proceeding as usual at the station, with little deviation from the routine established while Thompson lived in Normal. Sales have also improved, so that to the extent lower sales figures showed improper operation, that has now been abrogated.[2]

1. Amoco has argued at great length that "reasonableness" is to be determined upon a subjective standard, as required by *Brach*, 677 F.2d at 1222–24. This argument, though, was part of Amoco's contention that this cause should be *decided by analogy to* § 2802(b)(2)(A), which this Court has declined to do. The *Brach* discussion of the reasonableness standard was also concerned with § 2802(b)(2)(A)—specifically, the discussion centered on whether the contract term breached by the franchisee was reasonable, and the court held that the determination should be made from the point of view of the franchisor. In contrast, the instant case does not touch upon § 2802(b)(2)(A), but instead analogizes to § 2802(c)(3), which contains no *subjective elements*. Further, *the* "reasonableness" determination to be made under § 2802(b)(2)(C) would seem clearly to call for an objective appraisal—otherwise there would be no need for the list of examples of § 2802(c), nor for close judicial scrutiny in cases falling outside of § 2802(c). Hence, the determination of whether termination or nonrenewal for this event is reasonable is not made by asking whether Amoco thought it reasonable, but instead is made objectively, in light of all the facts and evidence presented at trial.

2. It is worth noting that Amoco has not suggested that Thompson's absence has resulted in any significant business problems at the station, beyond some lower earnings. Such business problems, had they existed, may have justified termination or nonrenewal under

A further reason exists to find termination and nonrenewal unreasonable here under § 2802(c)(3), and that is that Thompson was not even aware that the "event" had occurred until it would have been extremely difficult for him to cure. We have already held that the lease did not apprise Thompson of Amoco's franchisee-presence policy. Thompson moved to Missouri at the latest in early 1986; Amoco officials did not clearly articulate to him their policy until no earlier than the fall of 1986. At the same time, Amoco did (and still does) allow certain franchisees to obtain multiple-location franchises. (Both of these points were addressed in Amoco's Post Trial Memorandum). While it is clear that Amoco only grants multiple franchises for areas of close geographic proximity, it is also clear that allowance of multiple location franchises could mislead a franchisee as to Amoco's franchisee-presence policy. In fact, Thompson himself holds a multiple-location franchise. The Court finds that termination or nonrenewal under these circumstances is patently unreasonable.[3]

§ 2802(b)(3)(B) (allowing nonrenewal because of numerous customer complaints), 2802(b)(3)(C) (allowing nonrenewal for failure to keep the premises clean and safe), 2802(c)(8) (allowing nonrenewal or termination based upon the franchisee's failure to make timely payments to the franchisor), 2802(c)(9) (allowing termination or nonrenewal based upon failure of the franchisee to operate the premises for an unreasonable period of time), or 2802(c)(11) (allowing termination or nonrenewal because the franchisee has failed to abide by existing laws or regulations). Even *some* evidence of any of these, though not sufficient to call for nonrenewal or termination alone, may have added credence to a claim that the station was improperly operated.

3. Various lease provisions, which seem to anticipate managerial decisions being made by employees, add support to this conclusion. Lease Clause 15(g), for instance, parrots the language of § 2802(c)(3), and states that Amoco may not terminate or nonrenew in the event the franchisee becomes disabled unless the franchisee is unable to provide for the continued operation of the facilities—in other words, the clause suggests that the franchisee can have others run the station. Clauses 13(e), 15(d) and 20(a) also suggest that Amoco does not disapprove of the franchisee delegating his authority from afar, so long as the business is lawfully run.

Finally, Amoco has cited several cases in support of its position on the proper interpretation of § 2802(b)(2)(C); none of these cases, however, persuade the Court. *Day Enterprises, Inc. v. Crown Central Petroleum Corp.*, 529 F.Supp. 1291 (D.Md.1982), for instance, stands only for the proposition that contractual provisions are reasonable which require a franchisee to devote "substantially full time" to the franchise operation; that case was decided under § 2802(b)(2)(A), and so has no bearing upon the case at bar. Likewise, *Gruber v. Mobil Oil Corp.*, 570 F.Supp. 1088 (E.D.Mich. 1983), concerned the reasonableness of contractual provisions breached by the franchisee, and so was brought under § 2802(b)(2)(A). Furthermore, while *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984), *Clinkscales v. Chevron USA, Inc.*, 831 F.2d 1565 (11th Cir.1987), and *Crown Central Petroleum Corp. v. Waldman*, 515 F.Supp. 477 (M.D.Pa.1981), *aff'd without opinion*, 676 F.2d 684 (3d Cir.1982), all dealt with § 2802(b)(2)(C), none are close enough to the present case to sway this Court's view. *Moody* concerned the propriety of a contractual provision allowing nonrenewal or termination when the franchisor discovered the franchisee was in "financial distress;" since the case concerned an express contractual provision entered into between the parties, the court there appropriately borrowed the analytical framework of § 2802(b)(2)(A) in reaching its decision, as had the *Brach* court. *Moody*, 734 F.2d at 1216–18. *Clinkscales*, for its part, fell directly within § 2802(c)(8) (failure of the franchisee to timely pay sums lawfully due to the franchisor), and so termination or nonrenewal was automatically "reasonable" under § 2802(b)(2)(C). *Clinkscales*, 831 F.2d at 1570–72. Likewise, *Waldman* turned in part upon the fact that the franchisee failed to operate his station for an unreasonable length of time, thus falling squarely within § 2802(c)(9); in *Waldman*, termination or nonrenewal was automatically "reasonable" under § 2802(b)(2)(C). In contrast to these three cases, the case at bar does not fall squarely within any of the reasonable "events" calling for termination or nonrenewal in § 2802(c), nor is its closest analog in the PMPA the breach of contractual terms provision of § 2802(b)(2)(A). Hence, none of the cases persuade the Court to rule otherwise.

We have therefore ruled that neither of Amoco's affirmative defenses under the PMPA justifies its termination and nonrenewal of this franchise. Hence, the termination and nonrenewal is unlawful under the PMPA, and Amoco is enjoined from terminating and nonrenewing this franchise for any of the reasons set out in its notification of termination and nonrenewal by letter dated June 3, 1987.

This leaves only the question of Plaintiff's recovery to be addressed. Section 2805(b) of the PMPA allows the Court to award equitable relief as necessary; here, Thompson has sought declaratory and injunctive relief. Section 2805(d) allows, in addition, for the recovery of actual damages, for exemplary damages for willful disregard by the franchisor of the requirements of the PMPA, and for the award of reasonable attorney and expert witness fees, unless only nominal damages are awarded in which case the Court may deny shifting the fees. Here, Thompson has not sought actual damages; he has, however, asked for exemplary damages and attorney and expert witness fees.

■■■■ Amoco has previously moved to strike Thompson's request for punitive damages, arguing that punitive damages may not be awarded if actual damages are not sought. This Court denied that motion, holding that the PMPA, by its terms, does not require the award of actual damages to justify an award of punitives, but instead all that is needed is that the Defendant willfully disregard the edicts of the PMPA, and that punitive damages be appropriate. *See Midwest Petroleum Co. v. American Petrofina Marketing, Inc.*, 603 F.Supp. 1099, 1110 (E.D.Mo.1985). Likewise, this Court held that at that time Thompson stated sufficient grounds supporting his punitive damage claim to withstand a motion in limine. At this time, however, the Court must decline to grant the exemplary

damages requested. Thompson has wholly failed to show any willful disregard of the PMPA's requirements by Amoco. Indeed, the very length and intricacy of this opinion stand as testimony to Amoco's good faith in seeking termination and nonrenewal here. Amoco has a bona fide longstanding policy of requiring its franchisees to be physically present upon the franchised property. It attempted to, and thought it did, memorialize that policy by making it a contractual term. Amoco did not anticipate the ambiguity of Clause 15(f); it did not, in good faith, feel that Thompson had read the clause differently than Amoco meant it. And so Amoco, in good faith, attempted to terminate and nonrenew. Amoco's argument under § 2802(b)(2)(C) was likewise made in good faith.

This was by no means an easy victory for Thompson—the cause was hard fought and close every step of the way. In short, there has been no "conduct of the franchisor which was in willful disregard of the requirements of section 2802 or 2803 of [the PMPA], or the rights of the franchisee thereunder," and so this Court may not grant exemplary damages under § 2805(d)(1)(B).

■ Thompson is entitled to declaratory and injunctive relief, but is not entitled to actual or exemplary damages. Hence, this case falls under the proviso of § 2805(d)(1)(C) granting the Court discretion in the award of attorney and expert witness fees in cases of only nominal damages. In this situation, the Court feels that shifting fees to Amoco would not be appropriate, and so in our discretion we decline to charge Defendant with these fees. As noted, this has been a close, hard fought battle. Thompson is not clearly in the right here—Clause 15(f) can be read to require actual presence, and Amoco was not unreasonable in attempting to enforce its policy against a franchisee living some 300 miles from the franchised premises. Moreover, Thompson is by no means a nickel and dime, hand to mouth small-time operator. The proofs at trial indicate that Thompson is a successful businessman, holding several Amoco franchises and cur-

rently operating a multi-million dollar construction business in Lake of the Ozarks, Missouri. Thompson can afford to pay his own fees, and so Amoco will not be required to.

*Ergo*, for the reasons above given, the Court hereby DECLARES that Defendant Amoco wrongfully attempted to terminate and nonrenew this franchise in violation of the PMPA, and ENJOINS Defendant Amoco from terminating or nonrenewing this franchise for any of the reasons set forth in its notification of termination and nonrenewal by letter dated June 3, 1987.

Plaintiff's requests for exemplary damages and for attorney and witness fees are DENIED.

Case CLOSED.