**HADADY CORPORATION, Plaintiff,**

v.

**DEAN WITTER REYNOLDS, INC., Defendant.**

No. CV 89–1008 RB(Bx).

United States District Court, C.D. California.

March 28, 1990.

Russel R. Palmer, Jr., Thomas J. Daly, Christie, Parker & Hale, Pasadena, Cal., for plaintiff.

Robert D. Hornbaker, Freilich, Hornbaker, Rosen & Fernandez, Los Angeles, Cal., Michael T. Hannafan, Michael T. Hannafan & Associates, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEAN WITTER'S MOTION FOR SUMMARY JUDGMENT

BONNER, District Judge.

Defendant Dean Witter Reynolds Inc. moves for summary judgment on plaintiff's

complaint for copyright infringement and breach of contract, *viz.*, breach of a settlement agreement. A hearing was held on February 26, 1990, and the Court took defendant's motion under submission. After considering the parties' papers and the arguments made at the hearing, the Court grants the motion regarding plaintiff's copyright infringement claim but, denies the motion regarding its breach of contract claim.

## BACKGROUND

This dispute concerns defendant's use of plaintiff's copyrighted materials between July 1987 and January 1989. Plaintiff is Hadady Corporation ("Hadady Corp."). Defendant is Dean Witter Reynolds Inc. ("Dean Witter"). Plaintiff's complaint asserts two claims for relief in one count: copyright infringement and breach of contract. Plaintiff invokes federal question jurisdiction based on the federal copyright infringement claim.

■ Based on the declarations and depositions [1] the parties submitted and the stipulated facts contained in the Pretrial Conference Order,[2] the following material facts are undisputed:

| MATERIAL UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| **The copyrighted material** | |
| 1. Hadady Corp. publishes a weekly commodities market advisory service newsletter called "Bullish Consensus." | Hadady Decl. ¶ 2. Pretrial Conference Order ("PTC") ¶ 5(b). |
| 2. Bullish Consensus newsletter is mailed to paid subscribers every Tuesday, and is also transmitted by wire to other paid subscribers. | Hadady Decl. ¶ 2; PTC ¶ 5(b). |
| 3. The Bullish Consensus information is also transmitted by Commodity News Service (CNS), which in turn re-transmits the information to paid subscribers; CNS and Hadady Corp. share in the revenues. | Hadady Decl. ¶ 2; PTC ¶ 5(d). |
| **The parties' earlier dispute** | |
| 4. Sometime in 1985, Mr. Hadady, president of Hadady Corp., learned that Dean Witter's Chicago office was retransmitting Bullish Consensus information to a database to which Dean Witter brokerage offices around the country had unrestricted access. | Hadady Decl. ¶ 7. |
| 5. In 1985, Hadady Corp. sued Dean Witter (for copyright infringement and unfair competition) in the U.S. District Court for the Central District of California, CV 85–4660 PAR. | Hadady Decl. ¶ 7. |
| 6. Hadady Corp. and Dean Witter settled their 1985 action; the settlement agreement provides in relevant part: "4. *DWR agrees to refrain from transmitting any HADADY copyrighted work*, in whole or in part, on the DWR internal all-branch-office wire service, or on any other wire service, *without having received HADADY's prior written consent.* [¶]5. DWR agrees to refrain from reproducing any HADADY copyrighted work, in whole or in part, and to refrain from each other act which HADADY, as owner of the | Hadady Decl. ¶ 9 and Exhibit A, Enclosure C (August 1985 settlement agreement). |

**1.** The deposition transcripts submitted by the parties were not authenticated, nor were certified copies lodged. Generally, the Court cannot consider unauthenticated evidence. *Hal Roach Studios v. Richard Feiner and Co.*, 883 F.2d 1429, 1437 (9th Cir.1989). However, the failure to object to otherwise inadmissible evidence waives any objections the party might have had. *E.g., Townsend v. Columbia Operations*, 667 F.2d 844, 849 (9th Cir.1982); *Faulkner v. Federation of Preschool & Community Education Cen-* *ters*, 564 F.2d 327, 328 (9th Cir.1977). Neither party objected—either in writing or at the hearing—to the unauthenticated deposition transcripts.

**2.** The Court can consider the stipulated facts set forth in the Pretrial Conference Order. 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2724 at 74 (2d ed. 1983).

copyright, has the exclusive right to perform under The Copyright Act (17 U.S.C. § 106)." [Emphasis added.]

The form of the copyrights

7. From October 1, 1985, to September 15, 1987, the Bullish Consensus newsletter contained a copyright notice stating that "The information contained in this letter is protected by U.S. copyright laws through noon EST on the 2d day after its release ...." The copyright notice was proper. — Hadady Decl. ¶ 3(a); PTC ¶ 5(c).

8. From September 22, 1987, through the present, the Bullish Consensus newsletter copyright omitted the two-day limitation: "The information contained in this letter is protected by U.S. copyright laws...." — Hadady Decl. ¶ 3(b); PTC ¶ 5(f)(2).

9. The CNS transmission copyright never contained the two-day limitation. It contained a copyright notice and stated: "This information is for personal use or discussions with customers only." — Paul Decl. ¶ 7 and Exhibit A (CNS transmission); PTC ¶ 5(f)(2).

10. Hadady Corp. never omitted a copyright notice from either the Bullish Consensus newsletter or the Bullish Consensus wire transmission. — PTC ¶ 5(c).

11. Mr. Hadady intended the two-day copyright notice "to give Hadady's permission to subscribers to the printed Bullish Consensus publication to use and disseminate the publication information freely subsequent to midday of the second day following publication," although he did not thereby intend to "abandon any copyrights owned by Hadady in the Bullish consensus information." — Hadady Decl. ¶ 4.

Dean Witter's use of plaintiff's materials

12. In early 1986 Dean Witter began subscribing, on behalf of its Chicago office, to the CNS transmission of the Bullish Consensus materials on CNS. — Paul Decl. ¶ 7.

13. Dean Witter, Chicago, never subscribed to the Bullish Consensus newsletter, viz., the printed form. — Paul Decl. ¶ 1; PTC ¶ 5(g).

14. James Paul, a Dean Witter officer, was interested in transmitting the Bullish Consensus figures to other Dean Witter offices. Accordingly, in early spring 1987 Mr. Paul telephoned Mr. Hadady, with a proposal. — Paul Decl. ¶ 11; Hadady Decl. ¶ 8.

15. Mr. Paul proposed that Hadady permit Dean Witter to send the Bullish Consensus figures over its Bunker Ramo "Quotron" computer network, which is available to all Dean Witter offices, but that Dean Witter pay for only those offices—approximately 60—that actually used the information. — Paul Decl. ¶ 11; Hadady Decl. ¶ 8.

16. Mr. Hadady rejected the proposal. — Paul Decl. ¶ 11; Hadady Decl. ¶ 8.

17. In Spring 1987 Mr. Paul called Mr. Dougherty, "Hadady's director of marketing"—and, among other things, asked for a letter stating Hadady's copyright policy. — Paul Decl. ¶ 15; Dougherty Decl. [Hadady] ¶ 2.[3]

18. In May or June 1987, Mr. Paul spoke to Peter Hackstedde, a vice president of Hadady Corp., to clarify Hadady Corp.'s position regarding use by others of copyrighted material appearing in the Bullish Consensus. Specifically, Mr. Paul wanted to know whether Hadady Corp. had any objection to Dean Witter's use and dissemination of such information to Dean Witter offices after a certain period of time. Mr. Hackstedde told Mr. Paul that the information could be used and disseminated by anyone after noon, two days after the newsletter was circulated. Mr. Hackstedde referred Mr. Paul to Hadady's James Dougherty if Mr. Paul wished to — Hackstedde Dep. at 65, line 9–70, line 22. Paul Decl. ¶ 11.

**3.** Both parties submitted a declaration from James Dougherty. The two declarations are different. Dean Witter's proffered Dougherty declaration will be referred to as "Dougherty Decl. [Dean Witter] ¶ —"; Hadady's, as "Dougherty Decl. [Hadady] ¶ —."

have written confirmation of Hadady Corp.'s then-existing policy regarding use of copyrighted materials.

19. On July 2, 1987, Mr. Dougherty sent Mr. Paul a letter on Hadady letterhead stating that "To [answer] your question, 'The Bullish Consensus' is protected by copyright through noon EST of the second day after it's [*sic*] publication. *With a very occasional exception, that means Thursday noon.*" — Paul Decl. ¶ 17 and Exhibit A; Dougherty Decl. [Hadady] ¶ 2; PTC ¶ 5(i).

20. Mr. Dougherty drafted, but did not send, a letter dated September 24, 1987 to Dean Witter stating that "the copyright statement has been amended to eliminate any reproduction of the data without permission." — Dougherty Decl. [Dean Witter] ¶ 4 and Exhibit B; Paul Decl. ¶ 22; PTC ¶ 5(j).

21. Dean Witter transmitted the Bullish Consensus information over its Quotron system from mid-July 1987 until approximately February 1989; the information was entered into the Quotron system beginning noon, Chicago time, on each Thursday. — Paul Decl. ¶ 19; PTC ¶ 5(g).

22. Mr. Paul relied on Dougherty's July 2, 1987 letter regarding the two-day copyright limitation when Dean Witter entered Bullish Consensus data into Dean Witter's Quotron system. — Paul Decl. ¶ 24.

**Plaintiff's knowledge of defendant's use**

23. A month or two before Mr. Dougherty wrote the July 2, 1987 letter, Mr. Paul talked with Peter Hackstedde, Hadady Corporation's vice president, about the Bullish Consensus information. — Hackstedde Dep. at 60–63; 65–67.

24. Mr. Hackstedde was the "number two or three person in the Hadady organization." — Hadady Dep. at 286–87.

25. Mr. Paul told Mr. Hackstedde that Dean Witter was receiving the Bullish Consensus information through CNS or some other wire service. — Hackstedde Dep. at 70–71.

26. Mr. Hackstedde knew that Mr. Paul wanted to transmit the Bullish Consensus information over the Quotron system, and told Mr. Paul that Dean Witter was free to do so after noon on Thursdays. — Hackstedde Dep. at 69–70.

27. Mr. Hackstedde knew that Mr. Paul intended to transmit the Bullish Consensus information over the Quotron system after noon on Thursdays. — Hackstedde Dep. at 84–85.

**Hackstedde's knowledge of the 1985 settlement agreement**

28. Mr. Hackstedde knew of the 1985 settlement agreement, and made recommendations concerning it. — Hackstedde Dep. at 27–28.

29. Mr. Hackstedde did not know the specific terms of the 1985 settlement agreement. — Hackstedde Dep. at 27–28.

---

## CONTENTIONS

Dean Witter contends that (1) Hadady Corp. abandoned its copyright after two days; (2) Hadady Corp. is equitably estopped from asserting copyright infringement; (3) it is a statutory "innocent infringer"; and (3) the 1985 settlement agreement is not relevant to the instant dispute.

Hadady Corp. argues that (a) the Bullish Consensus newsletter copyrights did not expire after two days, but rather that Hadady Corp. extended to subscribers a license; (b) Hadady Corp. did not intend to abandon its copyright; (c) the 1985 settlement agreement prohibited Dean Witter from transmitting Hadady Corp.'s copyrighted works; and that Dean Witter: (d) was restricted by the copyright notice contained on the CNS transmission of the Bullish Consensus information; (e) should have known that Mr. Dougherty had no authority to extend Hadady Corp.'s consent to use the Bullish Consensus material; (f) has not

established equitable estoppel; and (g) is not an "innocent infringer."

In reply, Dean Witter argues that (1) it is entitled to judgment based on the facts contained in the pre-trial order; (2) Hadady Corp. avoids the unchallenged deposition testimony of Mr. Hackstedde; and (3) Mr. Hadady makes several fatal admissions in his deposition testimony.

## ANALYSIS

### 1. Summary judgment standard

 Rule 56 of the Federal Rules of Civil Procedure provides that a defendant "may, at any time, move with or without supporting affidavits for a summary judgment. . . ." Fed.R.Civ.P. 56(b). The defendant may so move if the pleadings and supporting material "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. 56(c). The defendant need not present evidence negating the plaintiff's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Instead the defendant may show "that there is an absence of evidence to support [the plaintiff's] case." Id. at 325, 106 S.Ct. at 2554. The plaintiff may not simply "rest upon the mere allegations or denials of [its] pleading." Fed.R.Civ.P. 56(e). At least some "significant probative evidence tending to support" the pleading—thus creating a material factual dispute—must be produced. T.W. Electrical Service v. Pacific Electrical Contractors, 809 F.2d 626, 630 (9th Cir.1987); Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. [4]

 A dispute is material only if it can reasonably be resolved in favor of either party at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

irrelevant or unnecessary will not be counted." Id. at 248, 106 S.Ct. at 2510. It is not enough that the plaintiff might possibly discredit at trial the testimony in support of the motion. United Steelworkers Of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir.), cert. denied, — U.S. ——, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). Too, "[t]he record on summary judgment controls, not that record plus speculative inferences a trier of fact might add." Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1542 (9th Cir.1988).

 Thus, summary judgment is appropriate if the plaintiff fails to (1) produce evidence supporting the existence of all essential elements on which the plaintiff bears the burden of proof and (2) show that all disputes about material facts or necessary inferences from the facts could reasonably be resolved in favor of either party by the trier of fact. See Celotex Corp., 477 U.S. at 322–23, 106 S.Ct. at 2552–52; Anderson, 477 U.S. at 250–52, 106 S.Ct. at 2511–12; California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

### 2. Abandonment and forfeiture

The Court concludes that during the period July 2, 1987 to September 22, 1987, Hadady Corporation abandoned its copyright in the Bullish Consensus information two days after publication.

 Abandonment occurs when the copyright proprietor intends to surrender a copyright interest in his work. Lopez v. Electrical Rebuilders, Inc., 416 F.Supp. 1133, 1135 (C.D.Cal.1976); 3 Nimmer on Copyright § 1306 at 13–130 (1989). To find abandonment, "the copyright owner must have clearly manifested that intention through some affirmative act." Goldstein, Copyright § 9.3 at 160 (1989); see also Transgo, Inc. v. Ajac Transmission Parts

**4.** The plaintiff's pleadings, however, may be used against it. See Lockwood v. Wolf Corp.,

629 F.2d 603, 611 (9th Cir.1980).

*Corp.,* 768 F.2d 1001, 1019–20 (9th Cir. 1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).[5]

██ Hadady Corp. manifested that intention: its copyright notice on the Bullish Consensus newsletter was clearly limited to two days. It does not matter that Dean Witter did not subscribe to the newsletter; Hadady Corp. abandoned copyright protection to the information contained therein with respect to the whole world.

Mr. Hadady declares that he did not subjectively intend by the two day notice to abandon Hadady Corp.'s copyright interest. But his declaration flies in the face of the only possible meaning the two-day copyright notice conveyed, and does not raise a triable issue of material fact. *Cf. Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1462–63 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986) (party cannot create a triable issue of material fact by submitting a declaration that contradicts clear earlier deposition testimony).

██ The abandonment ended, however, on September 22, 1987 when Hadady Corp. changed the form of its copyright notice to delete the two-day provision.

██ Hadady Corp. never forfeited its copyright. Forfeiture occurs when the copyright owner fails to affix the copyright notice to published copies of the work. *See NEC Corp. v. Intel Corp.,* 10 U.S.P.Q.2d (BNA) 1177, 1180, 1989 WL 67434 (N.D.Cal. 1989). The copyright owner's intent is not relevant: forfeiture can occur regardless of the owner's intent to preserve the copyright. *Donald Frederick Evans v. Continental Homes, Inc.,* 785 F.2d 897, 912 (11th Cir.1986); *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.,* 661 F.2d 479, 486 n. 6 (5th Cir.1981); 3 *Nimmer on Copyright* § 13.06 at 13–130 (1989) (hereafter *"Nimmer"*). There is no evidence in the record that the copyright owner—Hadady Corporation—ever failed properly to affix a copy-

right notice to the published copies of the Bullish Consensus. *See* PTC ¶ 5(c).

Because there was neither abandonment nor forfeiture of Hadady Corp.'s copyright interests between September 22, 1987 and January 1989, summary judgment must be denied on this ground.

### 3. *Equitable estoppel*

Hadady Corp. is estopped from asserting its copyright infringement claim for the entire period in dispute in this action.

██ Four elements must coalesce to make out an equitable estoppel defense to a copyright infringement claim:

(1) the plaintiff must know the facts of the defendant's infringing conduct;

(2) the plaintiff must intend that his conduct be acted on or must so act that the defendant has a right to believe that it is so intended;

(3) the defendant must be ignorant of the true facts; and

(4) the defendant must detrimentally rely on the plaintiff's conduct. *E.g.,* 3 *Nimmer* § 13.07 at 13–133 (citing Ninth Circuit authority). All four elements must be present. *E.g., Travelers Express Co. v. Cory,* 664 F.2d 763, 769–70 (9th Cir.1981) (non-copyright case); 3 *Nimmer* § 13.07 at 13–133 ("[p]rinciples of estoppel applicable elsewhere in the law are equally applicable in copyright infringement actions").

██ In this case, all four elements are satisfied insofar as plaintiff's copyright infringement claim is concerned.

*Knowledge:* The evidence is undisputed that Hadady Corporation's vice president, Peter Hackstedde, knew that Dean Witter intended to transmit the Bullish Consensus information over Dean Witter's inter-office computer information system after noon on Thursdays. Mr. Hackstedde acquired that information during the course and scope of his employment, and Mr. Hackstedde was an officer or key employee of Hadady Cor-

---

**5.** In *Transgo* the Ninth Circuit used the term "forfeiture" rather than "abandonment." But it is clear that *Transgo* is an abandonment and not a forfeiture case. *Id.* at 1019–20. As Professor

Nimmer has noted, "[d]espite the imprecise usage in some of the cases, abandonment must be distinguished from forfeiture of copyright." 3 *Nimmer* § 1306 at 13–130.

poration—he was, in Mr. Hadady's words, the "number two or three person" in the company. Nothing in the record remotely suggests Mr. Hackstedde was acting beyond his authority. " 'It is a well settled principle that knowledge of officers and key employees of a corporation, obtained while acting in the course of their employment and within the scope of their authority, is imputed to the corporation itself.' " *W.R. Grace & Co. v. Western U.S. Industries,* 608 F.2d 1214, 1219 (9th Cir.1979), *cert. denied,* 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980) (citation omitted).

*Intent/right to believe:* Based on the undisputed evidence regarding Mr. Hackstedde's conversations with Mr. Paul, it is clear that Mr. Hackstedde intended Mr. Paul to act on Mr. Hackstedde's explanation of the Hadady Corporation's two-day copyright policy. Moreover, Mr. Dougherty's July 2, 1987 letter reasonably led Dean Witter to believe that it could distribute the Bullish Consensus information over Dean Witter's Quotron system after noon, two days after distribution. The only reasonable inference to be drawn from that letter is that Hadady Corp. did not claim copyright protection after each Thursday at noon Eastern Standard Time.

*Ignorance:* Mr. Paul, not having subscribed to the Bullish Consensus newsletter, did not know that Hadady Corp. changed its copyright notice on the newsletter to delete the two-day limitation. There is no evidence presented by Hadady Corp. that anyone else at Dean Witter knew that Hadady Corp. changed its position in September 1987. The undisputed evidence is that Dean Witter first learned in late January 1989 that Hadady Corp. claimed copyright protection unlimited in time.

*Reliance:* Mr. Paul relied on Mr. Hackstedde's verbal statements and Mr. Dougherty's July 27, 1987 letter. The reliance is to Dean Witter's detriment, as evidenced by the present copyright infringement claim.

Only one reasonable conclusion can be drawn from the undisputed facts. Hadady Corp. is equitably estopped to assert a copyright infringement claim based on Dean Witter's use of Bullish Consensus information between July 27, 1989 and January 1989. Accordingly, summary judgment on the copyright infringement claim is appropriate and is granted. *Cf. Shamrock Development Co. v. City of Concord,* 656 F.2d 1380, 1386 (9th Cir.1981) (summary judgment on equitable estoppel inappropriate unless only one conclusion can be reached on the undisputed facts).

*4. The breach of contract claim*

As explained above, based on the evidence the Court concludes that Hadady did not forfeit its copyright to the Bullish Consensus information, and abandoned it only from July 2, 1987 through September 22, 1987. Accordingly, the Court concludes that Hadady gave up any copyright protection to that information before September 22, 1987, but as to Dean Witter is estopped to claim copyright infringement until January 1989.

■ The 1985 settlement agreement provides in relevant part that "DWR [Dean Witter] agrees to refrain from transmitting any HADADY copyrighted work, in whole or in part, on the DWR internal all-branch-office wire system, or any other such wire service, without having received HADADY's prior written consent." The July 2, 1987 letter merely set forth in writing Hadady Corporation's copyright policy. Dean Witter did not request and was not given "written consent" to transmit Hadady Corporation's copyrighted work. Hence, absent a waiver of the requirement that consent be in writing, Dean Witter breached the settlement agreement by transmitting Hadady Corp.'s copyrighted material without Hadady Corp.'s written consent. No knowing waiver of the requirement appears from the evidence. *See Spellman v. Dixon,* 256 Cal.App.2d 1, 5, 63 Cal.Rptr. 668 (1967). Moreover, under the agreement, oral consent, assuming *arguendo* it was given, will not suffice. Thus, Hadady Corp.'s claim for breach of the 1985 settlement agreement survives Dean Witter's summary judgment motion.

 Dean Witter did not argue that Hadady Corp. is equitably estopped from asserting its breach of contract claim. There is some authority, however, for the proposition that California law permits such a defense. *See Trustees of California State University & Colleges v. National Collegiate Athletic Ass'n,* 82 Cal. App.3d 461, 472, 147 Cal.Rptr. 187 (1978) ("The doctrine of equitable estoppel may be applied to prevent a person from asserting a right which has come into existence by contract"). Nonetheless, summary judgment on this basis is inappropriate for three reasons: First, Dean Witter did not argue estoppel as a defense to the breach of contract claim. Equitable estoppel is an affirmative defense; on summary judgment, Dean Witter has the burden of establishing it. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. Second, to permit that defense to a contract that includes a provision expressly requiring "prior written consent" would render that provision utterly ineffective. Third, if Dean Witter had sought protection against a breach of contract claim, it could have solicited Hadady Corp.'s written consent as required by the settlement agreement. On this record, the Court can only conclude that it did not do so and, more to the point, that it never obtained the required written consent.

### 5. *Statutory innocent infringer*

 Lastly, Dean Witter argues that under 17 U.S.C. § 405(b), it was a statutory innocent infringer. It was not. Under Section 405(b), a person who innocently infringes a copyright in reliance on an authorized publication from which the correct copyright notice *has been omitted* is not liable for infringing acts committed before receiving actual notice of the true copyright status, provided that such person was misled by omission of the copyright notice. 17 U.S.C. § 405(b); *Ruskin v. Sunrise Management, Inc.,* 506 F.Supp. 1284, 1289 (D.Col.1981). In the instant case, no copyright notice was omitted.

### CONCLUSION

Based on the undisputed material facts, Hadady Corp. abandoned its copyright from July 2, 1987 to September 22, 1987. In addition, Hadady Corp. is estopped from asserting its copyright infringement claim. However, for the period after September 22, 1987, Hadady's claim for breach of contract (the 1985 settlement agreement) survives. The Court cannot conclude that plaintiff gave written permission for Dean Witter to use plaintiff's copyrighted work.

Accordingly, the Court grants partial summary judgment on plaintiff's copyright infringement claim, but denies the motion regarding plaintiff's breach of contract claim with respect to the period after September 22, 1987.

IT IS SO ORDERED.