Michael CHANDLER, et al., Plaintiffs,

v.

Fob JAMES, et al., Defendants.

No. CV 96–D–169–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 12, 1997.

Steven Green, Americans United for Separation of Church and State, Washington, DC, Stephen L. Pevar, American Civ. Liberties Union, Denver, CO, Elizabeth Joy Hubertz, Levin, Middlebrooks, Mabie, Thomas, Mitchell, Papantonio & Lamb, Birmingham, AL, James A. Tucker, Alabama Civ. Liberties Union, Montgomery, AL, Pamela L. Sumners, Birmingham, AL, for Plaintiffs.

Jere L. Beasley, James A. Main, P. Leigh O'Dell, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, Alan Eric Johnston, Johnston, Trippe & Brown, Birmingham, AL, William P. Gray, Jr., Legal Advisor to the Governor, Governor's Office, Montgomery, AL, for Fob James, Jr.

William H. Pryor, Jr., Atty. Gen., Thomas F. Parker, IV, Deputy Atty. Gen., Office of Atty. Gen., Montgomery, AL, Jay A. Sekulow, American Center for Law and Justice, Mobile, AL, for Jeff Sessions.

Denise Boone Azar, Michael R. White, Dept. of Educ., Office of General Counsel, Montgomery, AL, Ashley H. Hamlett, Alabama Dept. of Public Health, Montgomery, AL, for Dr. Ed Richardson.

Denise Boone Azar, Larry E. Craven, Dept. of Educ., Office of Gen Counsel, Montgomery, AL, Ashley Hamlett, Alabama Dept. of Public Health, Montgomery, AL, for Bradley Byrne, G.J. Higginbotham, Stephanie Bell, Ethel Hall, Dr. Willie Paul, David Byers, Jr., Sandra Ray, Dr. Mary Jane Caylor.

Donald B. Sweeney, Jr., David P. Condon, Valerie T. Kisor, Rives & Peterson, Birmingham, Al, Oakley W. Melton, Jr., James Eugene Williams, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, Robert B. French, Jr., Fort Payne, AL, for Weldon Parrish, Jimmy Wilbanks, Johnny Young, Mary Etta Bailey, Willard A. Israel, Tommie Johnson.

Mark A. Rasco, Ralph Gaines, Gaines, Gaines & Rasco, P.C., Talladega, AL, J. Allen Schreiber, Gerald Alan Templeton, Lloyd, Schreiber & Gray, P.C., Birmingham, AL, James Eugene Williams, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, for Charles E. Kearley, James Braswell, T.Y. Lawrence, Jr., Bonnie Miller, Michael O'Brien, Helen Scales.

### MEMORANDUM OPINION AND ORDER [1]

DE MENT, District Judge.

The court finds it necessary to vacate the portions of its October 31, 1997 Order denying as moot Plaintiffs' September 27, 1996 Motion For Partial Summary Judgment. All other aspects of the court's October 31, 1997 Order shall remain in full force and effect. For the following reasons, the court finds that Plaintiffs' September 27, 1996 Motion For Partial Summary Judgment is due to be granted. The court previously granted leave for Plaintiffs to file their Motion For Partial Summary Judgment out of time.

The Plaintiffs have brought several closely related claims in this lawsuit. First, in Count One, they challenged Alabama Code section 16–1–20.3 as violative of the First Amendment on its face. The Plaintiffs sued Alabama's Attorney General, in his official capacity, as he is charged with the enforcement of Alabama statutes. The Plaintiffs also sued the State Board of Education and all of its members, including the State Superintendent of Education and the Governor, and the President of the State Board of Education, all in their official capacities.

1. The court retains jurisdiction over this action during the pendency of Plaintiffs' Rule 59 Motion. *See* Fed. R.App. P. 4(a)(4); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 59, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982); *see* *also,* Court's Supplemental Opinion and Order, notes 3–7 and accompanying text, issued concomitantly with this Memorandum Opinion and Order.

These parties, charged with implementing Alabama's laws regarding education, promulgated an administrative regulation, based on Alabama Code Section 16–1–20.3. The DeKalb County Board of Education carried out the statute and the regulation in the DeKalb County schools, where Michael Chandler works and where Jesse Chandler attends. This court has already addressed the facial statutory claim in its March 12, 1997 Opinion and Order ("March 1997 Opinion and Order"). There, the court found that § 16–1–20.3 violated both the Free Exercise Clause and the Establishment Clause of the First Amendment. The facial claim has been resolved as against these Defendants by the court's March 1997 Opinion and Order.

Based, in part, upon the court's findings in its March 1997 Opinion and Order, the court now finds that Plaintiffs are entitled to judgment as a matter of law on all of their claims discussed below. The court has made extensive factual findings in its Supplemental Opinion and Order issued concomitantly with this order, discussing injunctive relief, and it has delineated there general facts related to injunctive relief as well as summary judgment facts. The court does not recapitulate *in toto* those factual findings here, but rather, summarizes the facts at summary judgment and focuses on the law, including the burden the DeKalb County Board of Education bears at summary judgment.[2]

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1607, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2509; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories,

---

**2.** While the DeKalb County Board filed affidavits, it did not make reference to them in its brief nor suggest in its brief that there were "genuine issues of material fact" which remain to be resolved. Instead, the DeKalb County Board argued that if the court were to rule on the facial challenge to the statute, most of the issues in this case would be resolved. The Governor, over the Plaintiffs' protests, did oppose the motion for partial summary judgment against DeKalb County, filing a brief which dealt extensively with the filed affidavits.

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

In other words, the moving party must show a legal basis for the court to enter judgment, but it does not have to shoulder the burden of production. Once the moving party has made such a showing, it falls to the nonmoving party to produce evidence sufficient to establish the truth of each element on which it will bear the burden of proof at trial.

In *Celotex*, for example, the defendant, relying solely on the plaintiff's discovery responses, moved for summary judgment. Without producing any evidence that tended to negate the plaintiff's claims, the defendant argued that the plaintiff could not prove her claims at trial. In upholding the trial court's grant of judgment in favor of the defendant, the *Celotex* Court held that at summary judgment, the nonmoving party must support his or her claims. The moving party does not have to disprove them. It held that nothing in Rule 56 requires a moving party to support its motion with affidavits or with anything else that would disprove the nonmoving party's (usually the plaintiff's) claims. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. The moving party does not even have to prove the nonexistence of a genuine issue of material fact, but rather the nonmoving party must demonstrate that genuine issues for the fact finder do exist. *Id.* at 325, 106 S.Ct. at 2553.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DISCUSSION [3]

It is with these principles in mind that the court views the Governor's submission on behalf of DeKalb County and the affidavits filed by DeKalb County itself. Even when taking Defendants' responses into consideration, and under the standards enunciated herein, the court still finds that Plaintiffs are entitled to summary judgment. While the affidavits deny the existence of any "religious" activities, the witnesses simultaneously acknowledge that Bible readings, prayers and "devotionals" have taken place at various DeKalb County school-sponsored settings. Under *Celotex*, this is not a showing sufficient to demonstrate the existence of a genuine issue of fact. Whether a "devotional" took place may be a fact for resolution by the fact finder, but whether an admitted "devotional" given over the intercom during the school day violates the First Amendment is a matter of law for the Court to decide.

The court is mindful that it must draw inferences in favor of the nonmoving party. Nevertheless, when the nonmoving party, here DeKalb, as represented by the Governor, offers testimony in an affidavit that is internally contradictory, the court does not believe that it is under an obligation to ignore facts admitted by the witness (i.e., that Bible readings or prayers occurred) in favor of that witness' characterization of the same event (the Bible readings and devotionals that ended with a prayer were "not religious"). Similarly, the court does not believe that it is under an obligation to assume for purposes of summary judgment that an event did not occur, when, in response to the allegations of the Plaintiff, the Defendants' witness states that he or she does not remember whether the event took place or not. The court does not believe that this is a showing sufficient to "negate [the plaintiff's] claims" and demonstrate the existence of a material issue of fact.

I. Plaintiffs' Motion for Partial Summary Judgment

 The Plaintiffs moved for summary judgment as to several religious practices

---

**3.** Because of the factual nature of this inquiry, the court combines its analysis.

ongoing in DeKalb County. Some of these overlap with the issues on which Plaintiffs also sought judgment on the pleadings. The court notes at the outset that stipulations among parties are admissible for Rule 56 purposes and require no extrinsic evidence. *Hadady Corp. v. Dean Witter Reynolds,* 739 F.Supp. 1392, 1395 n. 2 (D.Cal.1990).[4] The same is true of undisputed documents. *See* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 2730.1 & nn. 10–11, at 84–85. The court may also consider affidavits earlier submitted in support of a motion for preliminary injunction. *Clinkscales v. Chevron USA, Inc.,* 831 F.2d 1565 (11th Cir.1987). Any exhibits in the court file at summary judgment may be admitted, regardless of the reason for their initial submission. *McLaughlin v. Liu,* 849 F.2d 1205, 1206 n. 3 (9th Cir.1988).

### A. *Prayer at Football Games*

██ In his affidavit, filed along with the Complaint, Michael Chandler offered testimony regarding prayers at the DeKalb County high school football games in paragraphs 8–16. Therein, he specifically testified that he has personally witnessed such prayers; that he has been offended on his behalf and on behalf of his son Jesse; and that he videotaped some of these prayers, including one at Valley Head High School, where he must attend all home games,[5] that occurred September 1, 1994. His Declaration under Penalty of Perjury of November 10, 1996 similarly contains testimony that students have been leading prayers at high school football games.[6] None of the Defendants has offered testimony that contradicts any of this evidence or that constitutes a genuine question of material fact.[7]

The practices which DeKalb has admitted in its Stipulations, paragraphs 51, 53 and 55, are unconstitutional, regardless of any purported explanation for them. *See Abington Twp. v. Schempp,* 374 U.S. 203, 223–24, 83 S.Ct. 1560, 1571–72, 10 L.Ed.2d 844 (1963); *Jager v. Douglas County Sch. Dist.,* 862 F.2d 824, 830 (1989), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *Nartowicz v. Clayton County Sch. Dist.,* 736 F.2d 646 (11th cir.1984). The court has so found in its March 1997 Opinion and Order.

### B. *Bible Readings and Devotionals at Assemblies*

██ The DeKalb Defendants have admitted that students gave "words of inspiration" and a teacher sang a religious song at a D.A.R.E. graduation attended by all fifth grade students. (Defendants' Response

---

4. The Eleventh Circuit has held, in a ruling based on stipulated facts, that if evidence is capable of different reasonable interpretations, findings based on one of these reasonable interpretations are not clearly erroneous. *GLBA v. Pryor,* 110 F.3d 1543, 1546–47 (11th Cir.1997) (*quoting L & C Marine Transport, Ltd. v. Ward,* 755 F.2d 1457, 1461 (11th Cir.1985)).

5. *See* Amended Answer of DeKalb County Board of Education, ¶ 19. *See also* Plaintiffs' Designation of Exhibits filed November 21, 1996 and Affidavit Of Michael Chandler filed February 1, 1996.

6. Exhibit B to the Plaintiffs' Motion to Enforce Voluntary Cessation Agreement is the videotape which according to the Chandler February 1, 1996 affidavit includes the September 1, 1994 Valley Head prayer. It also includes filmed prayer after this lawsuit was filed at Geraldine High School, but for purposes of summary judgment, the court does not consider the Geraldine prayer.

7. It is not the court's province to judge Mr. Parrish's veracity at this stage. Assuming that he is telling the truth, and that pregame student or clergy-led prayers had ceased during the 1996 school year, this is not a defense to the Plaintiffs' motion for summary judgment.

If a defendant could assure itself victory in a lawsuit simply by promising to "be good" in the future, the courts would be overrun with parties repenting of their past wrongdoing—temporarily. It is axiomatic that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case...." *U.S. v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 896, 97 L.Ed. 1303 (1953); *see also United States v. Oregon State Med. Soc'y,* 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952).

Mr. Parrish does not deny that pre-football game prayers have occurred in the past, but rather he claims that this activity has stopped after the lawsuit was filed. (Parrish Aff., ¶ 6.) Even assuming that this were true, voluntary cessation of allegedly unconstitutional conduct is not a defense.

¶¶ 28–32).[8] They do not deny, as the Plaintiffs allege in Stipulation number 30, that these words included a reading from the Old Testament. (Stipulation 30.) Rather, they "admit that two students volunteered to give words of inspiration at the D.A.R.E. graduation program at Fyffe School on May 18, 1994." (Stipulation 30.) In supplemented discovery apparently served February 4, 1995, the DeKalb Defendants equate "words of inspiration" with a "devotion."[9] In addition, the DeKalb Defendants admit that student-led devotionals have occurred during school-sponsored events and over the public address system. (Defendants' Response ¶¶ 30, 50). Michael Chandler's February 1, 1996 affidavit similarly offers testimony of student-led devotionals. While Donna Taheri testified to her opinion that student devotionals are merely inspirational rather than religious, and to her recollection that "there has never been a religious activity of any description at a D.A.R.E. ceremony," testimony elsewhere in her affidavit indicates that some students at D.A.R.E. graduation ceremonies gave Bible readings.

In response to Plaintiffs' Interrogatory Number 5, "Do the DeKalb defendants contend in this lawsuit that this May 18, 1994 action by these two students was 'non-sectarian, non-proselytizing, student-initiated voluntary prayer, invocations, and/or benedictions?'," the DeKalb defendants responded, "Yes" in addition to equating "words of inspiration" with "devotion[s]." The court finds it reasonable to conclude that mere "words of inspiration" would not require the invocation of the Alabama school-prayer statute and that DeKalb conflated such a category of inspirational words into the category of devotions in hopes of thereby insulating them from scrutiny. The specific invocation of the statute would not be necessary for secular "words of inspiration," and DeKalb has expressly invoked the language of the statute in discovery responses.

The same is true of conceded devotionals at Plainview School, referenced in Stipulation 50 and similarly answered "Yes" in response to the same contention interrogatory referencing that specific conduct. (In Stipulation 50, the DeKalb Defendants actually term the exercise "devotionals" and then additionally invoke the language of the statute.)

The court finds that a devotional is generally understood to be religious and that the affidavit of Bill Ayers refers to devotionals that took place at Plainview. He also testified to student messages over the intercom during the Gulf War that were of "a devotional character, ... but not religious," in paragraph 5 of his affidavit, while simultaneously testifying in paragraph 3 that he had no recollection of devotionals being broadcast. He testified that student messages "of a devotional character" contained "no religious references" although "there may have been an occasional brief religious reference or prayer." (Ayers Aff., ¶ 5.) The students giving the messages "did not pray and read the bible" "each" of the "three or four, maybe five times" they led the devotionals, according to Mr. Ayers.

He also testified to a devotional over the public-address system on Veterans Day 1995. DeLayne Etherton testified that this "devotion, meditation, or other inspirational message" ended with a prayer. (Etherton Aff., ¶ 8.) Like Mr. Ayers, DeLayne Etherton cannot recall "if a Bible reading or prayer was given" on other occasions "although there may have been, but not each time."

DeLayne Etherton cannot specifically recall the content of these "so-called 'devotionals'" that were "not necessarily" prayer and Bible reading. DeLayne Etherton does recall, however, that the Veterans Day message ended with a prayer but "was not of a religious nature." (*Compare* Etherton Aff. ¶ 8 *with* ¶ 6.)

At this juncture, *Celotex* comes into play. Testimony about "nonreligious" devotionals that ended with a prayer and that were conducted with the protection of a statute

---

8. While the D.A.R.E. program is not compulsory, all fifth graders in DeKalb County participate. See Stipulation 28.

9. The supplemental discovery, response to interrogatory number 5, is appended as Exhibit C to Plaintiffs' April 1, 1997 Supplement to Motion for Sanctions and Opposition to DeKalb Defendants' Request for Time.

that permits "student-initiated prayer, invocations and benedictions" at school events does not establish a genuine issue of material fact. Similarly, a witness who states that he cannot remember whether or not an event alleged to have happened by the moving party actually took place does not help the nonmoving party to meet its burden. The nonmoving party must come up with evidence that negates the version of events alleged by the moving party—an acknowledgment that the event may have occurred, but the witness cannot remember, falls short.

The court cannot reconcile these observations with the truism that prayer is a quintessentially religious act. The court further notes that, despite protestations that messages were merely inspirational or patriotic from all of DeKalb County's affiants, once again, it answered the Plaintiffs' contention interrogatory referencing student-initiated prayer in the language of the statute, "Yes."

The admissions of paragraphs 30 and 32 of the DeKalb Defendants' response are admissions of constitutional violations. See Engel, 370 U.S. at 426, 82 S.Ct. at 1264; Schempp, 374 U.S. at 203, 83 S.Ct. at 1560. These activities are unconstitutional, even if the religious devotionals were led or given by students. Schempp, 374 U.S. at 207, 83 S.Ct. at 1563 (prayer and Bible reading); Treen, 653 F.2d at 902 (prayer); Ingebretsen, 88 F.3d at 279; Hall, 656 F.2d 999 (student-led devotionals); Meltzer v. Board of Pub. Instr., 548 F.2d 559, 573–73 (5th Cir.), aff'd rehearing en banc, 577 F.2d 311, 312 (5th Cir.1978), cert. denied, 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979) (student-led devotionals); Herdahl v. Pontotoc County Sch. Dist., 887 F.Supp. 902, 908–09 (N.D.Miss.1995) (student-led devotionals over public-address system are not within the ambit of Equal Access Act, 20 U.S.C. 4071 et seq; Bible readings followed by short prayer speak to a captive audience through state machinery).

None of the affiants aid DeKalb County in establishing a genuine question of *material* fact as to prayer and devotionals—it is admitted in the affidavits, and in stipulations that predated them—that prayer occurred. The court concludes that there is no *de minimis* exception for Establishment Clause violations. Schempp, 374 U.S. 203, 225, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963); Jager, 862 F.2d at 832 (irrelevant that pregame prayers are brief and football season is short). Nor is the court persuaded that an exception exists for perceived crises and wartime. Indeed, the court would suspect that we might be most vigilant about the Establishment Clause at precisely such times. See generally Sch. Dist. of Grand Rapids v. Ball, 473 U.S. 373, 382, 105 S.Ct. 3216, 3221, 87 L.Ed.2d 267 (1985).

### C. Prayer in Classrooms

It is uncontroverted in the pleadings and in the record that there has been prayer in classrooms, as Plaintiffs allege. The court notes that the DeKalb County Defendants have responded to Plaintiffs' interrogatories regarding faculty solicitation of student volunteers to lead classroom prayer with the response that such activity was undertaken as "non-sectarian, non-proselytizing, student-initiated voluntary prayer, invocations, and/or benedictions." (See Plaintiffs' First Discovery Request to DeKalb Defendants; DeKalb Defendants' Answers to Plaintiffs' First Set of Interrogatories, "Yes").

Further, Michael Chandler testified in his affidavit that Ms. Carroll allowed prayer in her classroom and selected students to lead prayers over the course of several years, including in 1995. Ms. Carroll was one of Jesse Chandler's teachers in both fifth and sixth grades, and her classroom practices regarding prayer and religious activity were substantially similar in the 1993–94 and 1994–1995 school years. Mr. Chandler also testified that in 1995, Ms. Carroll read from her Bible to the class and selected devotionals for students to read.

As noted, the Defendants do not challenge this evidence. Indeed, they offer no testimony from Ms. Carroll. In paragraph 16 of their Amended Answer, the DeKalb County Defendants admit that Ms. Carroll allowed student volunteers to pray in front of the class. In stipulation 46, the DeKalb County Defendants "admit that Ms. Carroll asked for volunteers to lead prayers." Defendants also admit that Ms. Carroll read aloud from the Bible, and "may have selected devotionals for

students to read." The Plaintiffs asked the DeKalb Defendants in discovery, "In paragraph 46 of the DeKalb Defendants' Response to Plaintiffs' Statement of Stipulated Facts, the defendants state, 'Defendants admit that Ms. Carroll asked for volunteers to lead prayers.' Do the DeKalb defendants contend in this lawsuit that such prayers offered by student 'volunteers' are 'non-sectarian, non-proselytizing, student-initiated voluntary prayer, invocations, and/or benedictions'?" The Defendants responded, "Yes."

■ The court concludes, as it concluded in its March 1997 Opinion and Order, with reference to the statute, that such practices are unconstitutional regardless of whether the practices are ostensibly "voluntary" or "student-initiated" and regardless of whether prayers are nonsectarian or students may be excused from the classroom.[10] The court finds that such classroom practices need not involve direct coercion in the form of a legal penalty or sanction in order to offend the Establishment Clause.[11] The court further finds that it should be clear that activities such as those admitted by DeKalb County have been squarely governed by *Engel* and *Schempp* for some 35 years.

That said, the court further concludes that the teaching of *Schempp* is also that the Bible may be studied for its literary and historic qualities and that "such study of the Bible, when presented objectively as part of a secular program of education" is constitutional. This is distinct from reading devotionals from the Bible absent academic content.

### D. *Distribution of Bibles and Religious Literature by Nonstudents*

The DeKalb Defendants admit in their responses to stipulations that they permit representatives of Gideons International to distribute New Testaments to public school students in the classroom. (Stipulation ¶ 35.) Gideons representatives have been allowed to enter classrooms and make presentations to the students. (Powell Aff., ¶ 5.) Jesse Chandler was in a classroom where such presentations and distributions took place and felt compelled to accept a Bible. (Chandler Aff., ¶ 21.) The court does not seek to resolve any factual issue as to the content of any presentation the Gideons might make, because it is not material in view of the fact that the Gideons are impermissibly in the classroom during instructional time.

Courts have uniformly held that school officials are prohibited from permitting outside groups and individuals to distribute Bibles and other religious literature to students on public school property. *See Berger v. Rensselaer Central Schl. Corp.*, 982 F.2d 1160 (7th Cir.1993), *cert. denied,* 508 U.S. 911, 113 *S. Ct.* 2344, 124 L.Ed.2d 254 (1993); *Gregoire v. Centennial Schl. Dist.*, 907 F.2d 1366 (3d Cir.1990); *Lubbock C.L.U. v. Lubbock Indep. Schl.* Dist., 669 F.2d 1038, 1040, n. 38 (5th Cir.1982).[12] The reason for this proscription is that students are a captive audience in such situations and face school and peer pressure to accept the Bibles. In addition, such Bible distributions interfere with the rights of parents to raise their children according to family religious traditions. *See Schempp,* 374 U.S. at 226, 83 S.Ct. at 1573.

Bible distribution creates the impression of school endorsement of the religious activity and, as at least one court has noted, facilitates the accomplishment of the religious

---

**10.** *Engel v. Vitale,* 370 U.S. 421, 423–24, 82 S.Ct. 1261, 1262–63, 8 L.Ed.2d 601 (1962); *Schempp,* 374 U.S. at 224–25, 83 S.Ct. at 1572–73; *Lee,* 505 U.S. at 599, 112 S.Ct. at 2661; *Ingebretsen v. Jackson Pub. Sch. Dist.,* 88 F.3d 274, 279 (5th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 388, 136 L.Ed.2d 304 (1996); *ACLU v. Black Horse Pike Regional Bd. of Educ.,* 84 F.3d 1471, 1479–80 (3d Cir.1996); *Herdahl v. Pontotoc County Sch. Dist.,* 887 F.Supp. 902, 908 (N.D.Miss.1995); *Gearon v. Loudoun County Sch. Bd.,* 844 F.Supp. 1097 (E.D.Va.1993).

**11.** *Lee,* 505 U.S. at 592–95, 112 S.Ct. at 2657–59.

**12.** Public school classrooms and buildings are not public fora such that outside groups have any cognizable free-speech interest in distributions. *Berger;* 982 F.2d at 1166. Here, of course, the issue is distribution inside public-school classrooms during instructional time.

mission of groups such as the Gideons. *See Berger,* 982 F.2d at 1171. Such distribution here expressly occurred with the permission of school officials, such as Mr. Ashley and Ms. Powell at Fyffe. Superintendent Parrish testified that there is no formal written policy governing distributions of materials. (Parrish Aff., ¶ 8.) Policy is established by the individual school principals, and varies widely. (*See* Parrish Aff., ¶ 8; Ashley Aff., ¶ 8.)

Ms. Powell and Mr. Ashley testified that a distribution that occurred after homeroom was aberrational. (Ashley Aff., ¶ 6; Powell Aff., ¶ 5.) This testimony is not material because it does not affect the legal question concerning whether homeroom time is instructional time for establishment clause purposes.[13] Thus, any attempt to explain away the unconstitutional activity as an aberration or exception is unavailing. (*See, e.g.,* Ashley Aff., ¶ 6.) Defendants admit that they allowed Bible distribution to occur in a classroom setting, with participation of school officials; an atmosphere rife with potential for both proscribed endorsement of religion and peer pressure. A practice of in-school distribution immediately before the first class period is still constitutionally infirm. (*See* Powell Aff., ¶ 5.) The court is not persuaded by the "homeroom period is noninstructional time" argument made by all the Defendants' affiants on the subject.

Michael Chandler testified that all students are required to attend homeroom periods and that DeKalb County schools are closed campuses and that students are not free to leave. (Chandler Dec. of November 10, 1996.) Nowhere in the record is this testimony controverted. Moreover, the court finds that the question of what is "instructional time" for purposes of the Establishment Clause in such situations is resolved by *Schempp. Schempp* explicitly involved Bible readings which *opened the school day.* They were not given during time otherwise reserved for academic instruction, but rather, during homeroom, and were struck as unconstitutional. The classroom is not traditionally a public forum. *See, e.g., Lamb's Chapel*

*v. Center Moriches Union Sch. Dist.,* 508 U.S. at 392, 113 S.Ct. at 2146; *see also Berger,* 982 F.2d at 1167.

The distribution of Bibles or other religious material by nonschool persons during the school day, regardless of the exact location where that distribution took place (even outside the actual classroom), and purportedly involving only "willing" students, has been almost uniformly held unconstitutional. The critical factors for the courts are that students will feel compelled through peer pressure to accept the Bibles and will sense state endorsement. *Berger,* 982 F.2d at 1166–1167 & n. 7 (Gideon distribution at school "gives the Bible distribution an official quality."). The court finds that Defendants' practice of allowing Gideons and other outside groups to distribute Bibles and/or other religious materials to students during the homeroom period violates the Establishment Clause.

### E. *Miscellaneous Matters*

The court notes that initially, the DeKalb Defendants did not file a response to the Plaintiffs' motion. However, the Governor responded to the motion *filed against the DeKalb Defendants and concerning only events which took place in DeKalb County schools.* The DeKalb Defendants then filed a separate opposition to the Plaintiffs' Motion for Partial Summary Judgment, which ignored the affidavits purportedly offered on their behalf, made no reference to evidence, and relied on section 16–1–20.3 as DeKalb's sole justification for its actions. DeKalb County urged the court to rule on the facial validity of the statute before any other matters, representing that this would moot these remaining matters.

Plaintiffs moved to strike DeKalb affidavits on a number of grounds that were briefed extensively. The court finds that it need not do so, however, because it finds that DeKalb County has failed to meet its burden of adducing any evidence suggesting that a genuine question of material fact exists. Further, the matters raised in the affidavits

---

**13.** The court notes that the Equal Access Act applies only to secondary, not primary schools.

It is not implicated as regards the Gideon distributions at issue here.

purport to insinuate defenses to the Plaintiffs' claims. Legal conclusions about homeroom time, speculations about a witness' thoughts and motives, contradictions of earlier materials in the record while still offering admissions, and espousals of the theory that patriotism or national crisis justifies violation of the Establishment Clause do not meet the burden of resisting summary judgment here. Asking the court to decide the facial issue first is not evidence. Likewise, the court has already rejected the Governor's theory that the Free Exercise Clause negates the Establishment Clause:

> Although the Establishment Clause works with the Free Exercise Clause to fully safeguard our religious freedom, there is an inherent tension between the two clauses. If the Free Exercise Clause were an absolute mandate, it would subsume the Establishment Clause. Paradoxically, making "Free Exercise" an absolute mandate would ... effectively destroy "freedom of religion" as we know it.

> . . . . .

> Although the Free Exercise Clause guarantees complete freedom of belief, the guarantee does not extend to protect all religious activity.... If the Free Exercise Clause protected all religious activity, it would not be possible to maintain a civil, pluralistic society.... Similarly it is easy to see how the absolute protection of religious activity would quickly lead to an establishment of religion.

March 1997 Opinion and Order at 6–7 (internal citations omitted). In response to the argument that the statute, by allowing "nonproselytizing, nonsectarian student initiated prayers at compulsory and noncompulsory school-related events," did no more that set forth the students' Free Exercise rights, the court has noted:

> Under the dictates of the Establishment Clause and Supreme Court decisions, students do not have an absolute right to engage in such prayer. While the defendant argues that the statute does no more than recognize students' free exercise and free speech rights, the Court will not ignore the plain meaning of the statute .... section 16–1–20.3 ... authorizes religious

activity in our public schools which is plainly unconstitutional.

March 1997 Opinion and Order at 36 n. 31.

■ The court likewise finds no merit in the argument that state action is lacking. This argument, too, has been rejected by the court in its March 1997 Opinion and Order. In discussing the constitutionality of "voluntary" or "student-initiated" prayer, the Court discussed the relationship between student choice and state action:

> Moreover, in the public school setting, federal courts have repeatedly struck down legislation and practices permitting prayer, even when the prayer at issue was ostensibly "voluntary" or "student-initiated." For example, in *Engel v. Vitale,* the Supreme Court declared unconstitutional a school district's practice of having students recite aloud a non-denominational prayer even though students were free to elect not to participate.

> . . . . .

> Similarly, because the resources and facilities of the state are utilized when a "student-initiated" prayer is given in public schools, those hearing the prayer may be led to believe the state is associated with or endorses either the speaker's religion, or religion over non-religion.

March 1997 Opinion and Order at 10–11.

■ As to all of Plaintiffs' claims, the court rejects the apparent *de minimis* argument. The Governor argues that nonpervasive First Amendment violations are unworthy of the court's notice. (*See* Gov. Br. at 17 (prayer before a football game is "a minute part of the program"); Gov. Br. at 14 ("any incidental religious comment does not work an establishment of religion"); Gov. Br. at 12 (no constitutional violation occurs where religious activities are not "pervasive"); *see also* Powell Aff., ¶ 5 (Gideon presentation was "short").) The argument is, as already noted, unavailing. *See Engel,* 370 U.S. at 436, 82 S.Ct. at 1269; *Schempp,* 374 U.S. at 224–25, 83 S.Ct. at 1572–73.

Most recently, in *Lee v. Weisman,* the Supreme Court was again confronted with the claim that a brief "nonsectarian" prayer

occurring once in a lifetime was a *de minimis* act. The Court again rejected the *de minimis* argument:

> It is, we concede, a brief exercise during which the individual can concentrate on joining its message, meditate on her own religion, or let her mind wander. But the embarrassment and the intrusion of the religious exercise cannot be refuted by arguing that these prayers, and similar ones to be said in the future, are of a de minimis character. To do so would be an affront to the Rabbi who offered them and to all those for whom the prayers were an essential and profound recognition of divine authority ... [T]he intrusion was both real and, in the context of a secondary school, a violation of the objectors' rights.

*Lee,* 505 U.S. at 594, 112 S.Ct. at 2659.

In *Jager v. Douglas County School District,* 862 F.2d 824 (11th Cir.), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989), Judge Johnson rebuffed the school district's contention that a prayer of 60 to 90 seconds is a *"de minimis* violation." *Id.* at 832. Judge Johnson wrote:

> This approach is flawed. It is 'no defense to urge that the religious practices here may be relatively minor encroachments on the First Amendment'.... The Establishment Clause does not focus on the amount of time an activity takes, but rather examines the religious character of the activity. As the Fourth Circuit recognized ... '[a] prayer, because it is religious does advance religion and the limited nature of the encroachment does not free the state from the limitations of the Establishment Clause.'

*Id.* (internal citations omitted).

Nothing in the evidence rescues the Defendants from the mandates of *Celotex.* Nothing in the evidence suggests either a valid defense or a genuine question of *material* fact. The Defendants' affidavits do not do so. Accordingly, the court finds that summary judgment is due to be granted.

**14.** See the court's Supplemental Opinion and Order, also issued on this date, at footnote 53

**ORDER**

Based on the foregoing, it is hereby CONSIDERED and ORDERED that:

(1) That portion of the court's October 31, 1997 Order denying as moot Plaintiffs' September 27, 1996 Motion For Partial Summary Judgment be and the same is hereby VACATED. All other aspects of the court's October 31, 1997 Order shall remain in full force and effect.

(2) Plaintiffs' September 27, 1996 Motion For Partial Summary Judgment be and the same is hereby GRANTED.

(3) The court's Supplemental Opinion and Order, issued concomitantly, on this date, with this Memorandum Opinion and Order shall be and the same is hereby INCORPORATED BY REFERENCE into this Supplemental Opinion and Order.[14]